**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

WINN-DIXIE STORES, INC.,
a Florida corporation,

        Plaintiff,

v.                                                Case No. 3:13-cv-1172-J-34JRK

LJD&A CORPORATION, f/k/a
KANE INDUSTRIES CORPORATION,
a California corporation, and KANE
HOME PRODUCTS, LLC, a Washington
limited liability company,

        Defendants.
_____

## ORDER

**THIS CAUSE** is before the Court on Defendant Kane Home Products' Motion to Dismiss Count III of Complaint with Incorporated Memorandum of Law (Doc. No. 8; Motion) filed on November 4, 2013. Plaintiff filed a response opposing the Motion on December 3, 2013. See Plaintiff's Opposition to Defendant Kane Home Products' Motion to Dismiss Count III of Complaint with Incorporated Memorandum of Law (Doc. No. 14; Response). Accordingly, the Motion is ripe for review.

**I.    Background**

Plaintiff, Winn-Dixie Stores, Inc. (Winn-Dixie), initiated the instant action on September 25, 2013, by filing its Complaint (Doc. No. 1). In the Complaint, Winn-Dixie alleges that it maintains a policy with its vendors including Defendant LJD&A Corporation,

f/k/a Kane Industries Corporation (Kane Industries), for discontinuing items that customers are not purchasing and either selling them at reduced rates, returning them to the vendor, or disposing of them. See id. ¶¶ 6-7, 9; Exhibit A to the Complaint, Discontinued Item Policy (Doc. No. 1-1).[1]  Winn-Dixie also either returns or disposes of "damaged items, unsaleable items, callbacks, guaranteed sale items, and manufacturer recalls" pursuant to the terms of the applicable reclaim agreement with the vendor. See Complaint ¶¶ 9-11; Exhibit B to the Complaint, Corporate Reclamation Policy (Doc. No. 1-2; Reclaim Policy).  According to the Discontinued Item and Reclaim Policies, each vendor is liable to Winn-Dixie for any loss incurred on the discontinued items and for "the item cost per Reclaim, plus certain amounts related to handling and storage costs, and certain amounts related to disposition of the Reclaims."  Complaint ¶¶ 8, 13.

According to the Complaint, these terms are consistent with the industry standard for allocating risk between vendors and retailers, and Winn-Dixie requires any vendor with which it does business to "agree to abide by the terms and conditions of the Discontinued Item Policy and the Reclaim Policy." See id. ¶¶ 15-16.  As one of Winn-Dixie's vendors, Kane Industries supplied general merchandise such as dinnerware to Winn-Dixie, and agreed to both the Discontinued Item and Reclaim Policies.  See Complaint ¶¶ 18-22; Exhibit C to the Complaint, Winn[-]Dixie Stores, Corporate Reclamation Agreement (Doc.

---

[1] On a motion to dismiss, the Court's consideration is limited to those facts contained in the complaint and the attached exhibits. Griffin Indus., Inc. v. Irvin, 496 F.3d 1189, 1199 (11th Cir. 2007). Under Rule 10(c), "attachments are considered part of the pleadings for all purposes, including a Rule 12(b)(6) motion." Solis-Ramirez v. U.S. Dep't of Justice, 758 F.2d 1426, 1430 (11th Cir. 1985); see also Fed. R. Civ. P. 10(c) (the exhibits are part of the pleading "for all purposes"). Additionally, "when the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern." Griffin Indus. Inc., 496 F.3d at 1206.

No. 1-3; Kane Industries Reclamation Agreement). Pursuant to the Discontinued Item and Reclaim Policies, Winn-Dixie issued invoices to Kane Industries dated between November 17, 2010, and August 31, 2011, for a total amount due of $222,626.70. See Complaint ¶¶ 24-26; Exhibits D through K to the Complaint (Doc. Nos. 1-4 – 1-11; Invoices). Although each of the Invoices was due upon receipt and subject to an eighteen percent interest rate per year after thirty days, Winn-Dixie alleges that Kane Industries has failed to pay the Invoices, thereby breaching its contract. See Complaint ¶¶ 28-30.[2]

As to Defendant Kane Home Products, LLC (KHP), Winn-Dixie alleges that KHP entered into an asset purchase agreement[3] with Kane Industries dated January 11, 2011. Complaint ¶ 42. Relying on KHP's admissions contained within a lawsuit KHP filed against Kane Industries (the KHP lawsuit),[4] Winn-Dixie alleges that "KHP purchased substantially all of the assets of Kane Industries, including without limitation, inventory, accounts receivable, purchase orders, intellectual property, books and records, claims, contractual rights, miscellaneous personal property, goodwill, and compute[r] hardware and software." Complaint ¶¶ 43-44(a). Although Winn-Dixie does not attach a copy of KHP's complaint, it alleges that, in that lawsuit, KHP claims that Kane Industries made representations and warranties regarding Kane Industries' compliance with certain laws as well as its ownership

---

[2] In Counts One and Two of the Complaint, Winn-Dixie asserts claims for breach of contract and "account stated," seeking to recover the balances of the unpaid Invoices from Kane Industries. See Complaint at 6-9. Neither Count is at issue in the instant Motion.

[3] Although Winn-Dixie refers to the asset purchase agreement as "the APA," it does not attach a copy of that agreement to the Complaint.

[4] KHP filed its suit on or about August 9, 2012, in Case No. 2:12CV01352, in the United States District Court for the Western District of Washington, Seattle Division. Complaint ¶ 43.

and ability to sell the purchased assets, intellectual property, customers, suppliers, and accounts receivable. Id. ¶ 44(b). Specifically as to Winn-Dixie, Kane Industries represented that Winn-Dixie was one of its top 25 customers and warranted that it had no indication that Winn-Dixie or any of its other significant customers would change their current relationships with Kane Industries in a manner that would adversely affect Kane Industries' business. Id. ¶¶ 44(d)-(g).

Shortly after the closing, which took place on January 31, 2011, "Winn-Dixie informed KHP that Winn-Dixie had unresolved claims against Kane Industries and that Winn-Dixie would not do any business with KHP until the unresolved claim was paid." Id. ¶ 44(c),(i). KHP demanded that Kane Industries resolve Winn-Dixie's claim or indemnify KHP from the claim pursuant to the asset purchase agreement. Id. ¶¶ 44(j)-(k). Again based on KHP's allegations in the KHP lawsuit, Winn-Dixie alleges, "[a]ccording to the terms of the APA, KHP did not assume any of Kane Industries' obligations or liabilities, except such obligations and liabilities expressly assumed by KHP." Id. ¶ 44(l). Winn-Dixie quotes the Liabilities section of the asset purchase agreement as containing the following language:

> Liabilities. [KHP] is not assuming, and shall not in any way become liable for, [Kane Industries'] or the Business' debts, liabilities or obligations of any nature whatsoever, whether accrued, absolute or contingent, whether known or unknown, whether due or to become due and whether or not related to [Kane Industries], the Business or the Purchased Assets, and regardless of when or by whom asserted; except that, [KHP] is assuming effective as of the Closing Date the liabilities and obligations arising out of the Assumed Purchase Orders described and listed in Schedule 2.3 arising and incurred after the Closing Date; except that, [KHP] shall not, under any circumstances, be liable for any and all sales commissions and employee bonuses or other employee payments, related in any way to the Assumed Purchase Orders, unless [KHP] expressly agrees to do so in writing.

Id. ¶ 44(m). [5]

Winn-Dixie alleges that, despite the above disclaimer of certain liabilities, KHP admits to making "payments to those creditors of Kane Industries" in the KHP lawsuit. Id. ¶ 45.[6] Seeking to hold KHP liable as a successor to Kane Industries for the unpaid Invoices, Winn-Dixie alleges that the asset purchase agreement and KHP's conduct following the closing establish that "KHP made an express or implied assumption of all of Kane Industries' liabilities and obligations to Winn-Dixie." Id. ¶ 46-47. Based on these allegations, Winn-Dixie asserts a breach of contract and/or successor liability claim against KHP in Count Three of the Complaint. See id. at 11-13. In response to the Complaint, KHP filed the instant Motion, contending that Winn-Dixie has not stated a cause of action for successor

---

[5] Winn-Dixie did not append Schedule 2.3 or list those liabilities expressly assumed within that Schedule. In its Motion, KHP attaches a document entitled Assumed Purchase Order, which KHP purports is the Schedule 2.3 identified in the asset purchase agreement. See Exhibit A to Motion, Schedule 2.3 - Assumed Purchase Orders (Doc. No. 8-1; Schedule 2.3); Motion at 7-8. KHP contends Schedule 2.3 represents the sole exception to KHP's disclaimer that it is not assuming any of Kane Industries' liabilities as to unlisted obligations including the Winn-Dixie Invoices. See Motion at 3, 7-8. As this matter is before the Court on a motion to dismiss, the Court will not consider matters outside the pleadings to determine whether or not any purchase orders relating to Winn-Dixie were included in KHP's assumed liabilities. Griffin Indus., Inc., 496 F.3d at 1199. When a party moves to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief can be granted, and matters outside of the pleadings are presented to and not excluded by the court, the motion is ordinarily treated as if it were a motion for summary judgment under Rule 56. SFM Holdings, Ltd. v. Banc of Amer. Sec., LLC, 600 F.3d 1334, 1337 (11th Cir. 2010); Jones v. Auto. Ins. Co. of Hartford, 917 F.2d 1528, 1531-32 (11th Cir. 1990). Nevertheless, the Eleventh Circuit has instructed that a district court may consider extrinsic evidence in ruling on a motion to dismiss "if it is (1) central to the plaintiff's claim, and (2) its authenticity is not challenged." SFM Holdings, 600 F.3d at 1337; see also Trustmark Ins. Co. v. ESLU, Inc., 299 F.3d 1265, 1267-68 (11th Cir. 2002). In its Response, Winn-Dixie disputes the accuracy and completeness of the Assumed Purchase Orders and contends that because KHP submits evidence outside the pleadings, the Court must convert the Motion into one for summary judgment and deny it. See Response at 6-8. Because the Court determines that conversion to summary judgment is not appropriate at this stage of the proceedings before completion of discovery, it will not consider evidence outside of the pleadings in determining the sufficiency of the allegations in Count Three of the Complaint.

[6] The Complaint contains two paragraphs numbered "44" as a result of a typographical error. See Complaint at 11, 13; Response at 5. The Court refers to the paragraphs in their actual sequence; thus, the second paragraph 44 is paragraph 45, labeled paragraph 45 is paragraph 46, and so on.

liability and instead is attempting to create a new basis for the imposition of successor liability. See generally Motion.

### II.   **Standard of Review**

In ruling on a motion to dismiss, the Court must accept the factual allegations set forth in the complaint as true. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 n.1 (2002); see also Lotierzo v. Woman's World Med. Ctr., Inc., 278 F.3d 1180, 1182 (11th Cir. 2002). In addition, all reasonable inferences should be drawn in favor of the plaintiff. See Omar ex. rel. Cannon v. Lindsey, 334 F.3d 1246, 1247 (11th Cir. 2003) (per curiam). Nonetheless, the plaintiff must still meet some minimal pleading requirements. Jackson v. Bellsouth Telecomm., 372 F.3d 1250, 1262-63 (11th Cir. 2004) (citations omitted). Indeed, while "[s]pecific facts are not necessary[,]" the complaint should "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Further, the plaintiff must allege "enough facts to state a claim that is plausible on its face." Twombly, 550 U.S. at 570. "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). A "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" Twombly, 550 U.S. at 555 (internal quotations omitted); see also Jackson, 372 F.3d at 1262 (explaining that "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will

not prevent dismissal") (internal citation and quotations omitted). Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions[,]" which simply "are not entitled to [an] assumption of truth." See Iqbal, 556 U.S. at 678-79. Thus, in ruling on a motion to dismiss, the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face[.]'" Id. at 678 (quoting Twombly, 550 U.S. at 570).

### III.   Analysis

In moving to dismiss Count Three, KHP argues that Winn-Dixie has not stated a claim for successor liability against it. Generally, a successor corporation is not liable for the actions of a predecessor corporation or other business entity. Florio v. Manitex Skycrane, LLC, NO. 6:07-cv-1700-Orl-28KRS, 2010 WL 5137626, at *3 (M.D. Fla. Dec. 10, 2010). Indeed, a "corporation that acquires the assets of another business entity does not as a matter of law assume the liabilities of the prior business." Corporate Express Office Prods., Inc. v. Phillips, 847 So. 2d 406, 412 (Fla. 2003). However, Florida courts recognize four exceptions to this general rule: those circumstances in which "(1) the successor expressly or impliedly assumes obligations of the predecessor, (2) the transaction is a de facto merger, (3) the successor is a mere continuation of the predecessor, or (4) the transaction is a fraudulent effort to avoid liabilities of the predecessor." Bernard v. Kee Mfg. Co., 409 So. 2d 1047, 1049, 1051 (Fla. 1982). This imposition of liability "is based on the notion that no corporation should be permitted to commit a tort or breach of contract and avoid liability through corporate transformation in form only." Lab. Corp. of Am. v. Prof'l Recovery Network, 813 So. 2d 266, 269 (Fla. 5th DCA 2002) (internal citation omitted).

Although KHP addresses each of the above exceptions and contends that Winn-Dixie impermissibly attempts to create a new exception, see generally Motion, Winn-Dixie clarifies in its Response that it is only alleging that KHP expressly or at least impliedly assumed Kane Industries' obligations. See Response at 3-6. As to the alleged assumption of liability, KHP argues that Winn-Dixie could not allege that it expressly assumed any liability for Kane Industries' debt to Winn-Dixie because, in the Complaint, Winn-Dixie alleges the opposite: that, under the terms of the asset purchase agreement, KHP did not assume any of Kane Industries' obligations or liabilities except those KHP expressly assumed. Motion at 7 (quoting Complaint ¶ 44(l)). KHP explains that those liabilities KHP expressly assumed related only to pending, and as of the closing date, unfilled, purchase orders from Kane Industries' vendors and have nothing to do with payment of costs for returned goods under Winn-Dixie's Reclaim Policy. See id. at 7-8. Because the Court cannot determine what was listed in Schedule 2.3 as expressly assumed liabilities from the Complaint, KHP's arguments are unavailing.

Further, KHP does not address whether it impliedly assumed any of Kane Industries' debts as alleged, but instead claims that Winn-Dixie is attempting to create a new exception to the general rule that a successor company is not liable based on the partial payment of existing obligations. See id. at 3-4. Without citation to any legal authority, KHP summarily declares that "a successor entity's payment of some of a predecessor entity's debts that the successor entity is not contractually obligated to pay is not one of the limited factors that courts have previously held to impose successor liability on a successor entity." Id. at 3. KHP contends that such conduct cannot be construed as an implied assumption of a

8

predecessor entity's debts. See id. Not surprisingly, Winn-Dixie disagrees. It argues that the allegation regarding "the payment by KHP of certain purportedly non-assumed liabilities of Kane Industries, supports express and implied assumption of the liabilities at issue in that KHP clearly assumed liabilities of Kane Industries outside of the plain language found in the four corners of the Asset Purchase Agreement, leading to a course of dealing that would establish express or implied assumption of the liabilities at issue in this action." Response at 5-6.[7]

While KHP may have disclaimed certain liabilities and assumed others, likely to maintain certain customer relations, the scope of KHP's assumption is not evident from the Complaint. Accepting the allegations of the Complaint as true and drawing all inferences in Winn-Dixie's favor, Winn-Dixie sufficiently alleges that KHP assumed Kane Industries' liabilities such that it may be liable for Kane Industries' breach of contract. See Mana Internet Solutions, Inc. v. Internet Billing Co., No. 06-61515-CIV-COOKE/BROWN, 2007 WL 1455973, at *2 (S.D. Fla. May 16, 2007) (denying motion to dismiss based on allegation that defendant had taken control of company and responsibility for ensuring that company's debts were paid, which the court determined was an allegation that defendant expressly or impliedly assumed the obligations of its predecessor); see also Coral Windows Bahamas,

---

[7] Winn-Dixie also argues that it has alleged that KHP purchased, without limitation, accounts receivable, purchase orders, and other assets from Kane Industries. See Response at 4-5. Further, Winn-Dixie contends that, because KHP sought indemnity from Kane Industries in its own suit, KHP contemplated its own exposure to liability. See id. at 5. These arguments are not persuasive because it is possible for a successor company to purchase all the assets of a predecessor entity without assuming liability for the predecessor's debts. Indeed, that is the general rule under Florida law. See Florio, 2010 WL 5137626, at *3; Phillips, 847 So. 2d at 412. Therefore, these allegations on their own are not sufficient to subject KHP to successor liability.

LTD v. Pande Pane, LLC, No. 11-22128-Civ., 2013 WL 321584, at *4 (S.D. Fla. Jan. 28, 2013) (denying summary judgment based on genuine issues of material fact as to whether express assumptions of liability in light of failure to assume any other liabilities, including the plaintiff's claim, was sufficient to warrant successor liability).

The Court notes that, in its Motion, KHP states that Winn-Dixie does not, and cannot ever, allege that KHP has paid any of Kane Industries' alleged obligations, and explains instead that KHP made "de minimis payments of outstanding debt of [Kane Industries] that were necessary to preserve on-going customer relationships." Motion at 3 n.3. KHP may well be able to prove these representations; however, the Court must accept Winn-Dixie's factual allegations as true at this stage of the litigation. See Iqbal, 556 U.S. at 678; see also Horwitz v. Wells Fargo, No. 12 C 1968, 2012 WL 5862752, at *1 (N.D. Ill. Nov. 19, 2012) ("At this stage of the litigation, however, plausibility, not proof, is required."). Through its purchase agreement, it appears that KHP has acquired the business relationship between Kane Industries and Winn-Dixie. The allegations of this transfer along with KHP's payment of certain of Kane Industries' previous obligations could support the imposition of successor liability against KHP for Kane Industries' alleged breach of contract. Therefore, Winn-Dixie's Complaint states a plausible cause of action for successor liability and the Motion is due to be denied.

In light of the foregoing, it is hereby **ORDERED**:

Defendant Kane Home Products' Motion to Dismiss Count III of the Complaint with Incorporated Memorandum of Law (Doc. No. 8) is **DENIED**.

**DONE and ORDERED** at Jacksonville, Florida, this 3rd day of September, 2014.

*[signature]*
**MARCIA MORALES HOWARD**
United States District Judge

lc16

Copies to:

Counsel of Record